[Byrd v. Hickman.]

# Byrd *v.* Hickman.

*Assumpsit.*

(Decided April 21, 1910.   52 South. 426.)

1. *Statute of Fraud; Promised Answer for Debt or Default of Another.*—Where, for a consideration, moving from a debtor, or for a detriment suffered by a debtor, another engages with the debtor to pay a debt to the debtor's creditor, the agreement is not within the statute of frauds, as the engagement is independent and supported by a new consideration.

2. *Same; Consideration.*—The assignment of a rent note to a creditor of an assignor on such creditor's promise to pay a debt of the assignor to a third person is a good consideration for the promise if such assignment and delivery was not merely a payment of the assignor's debt to the creditor.

3. *Appeal and Error; Amendment; Objection.*—A request for the general affirmative charge cannot serve the place of an objection to the allowance of an amendment to the complaint alleged to introduce a new cause of action, or in lieu of a motion to strike on that account.

4. *Actions; Complaint; Misjoinder.*—Where a count alleged that L. was indebted to plaintiff and that defendant to obtain payment from L. of a debt owing to him out of money L. intended to pay plaintiff, agreed with L. that if L. would pay the defendant the money in question, defendant would pay to plaintiff L.'s note and take up the mortgage securing it when due, and that L. paid defendant such sum, and defendant failed to pay L.'s note to plaintiff; that plaintiff elected to accept the promise made by the defendant, and that defendant in a conversation with L. asked her to call his attention to the fact a few days before the note and mortgage became due to plaintiff, which she did, whereupon, defendant again promised L. to pay it, but before doing so required her to agree to transfer to the defendant a rent note which was assigned to defendant as promised, did not join two distinct causes of action, since the second engagement declared upon is the same as the first, with the additional element incorporated therein by mutual assent of the parties, and no other consideration than the mutual assent was necessary to support the addition so made.

5. *Contracts; Consideration.*—One's doing or agreeing to do or not to do that which is his bounden duty to do or not to do, is not a sufficient consideration to support a promise by another, and hence, a promise of one owing a debt to make a payment thereon would be no consideration for a promise of such one's creditor to pay a debt to a third person.

6. *Same; Validity.*—The fact that a contract is peculiar and may bear grievously upon one of the parties thereto will not render it invalid, if it offends against no law.

7. *Limitation of Action; Commencement; Complaint; Amendment.*
—Where it refers to the same transaction as to property, title and
parties, as the original count, a count added by amendment to a com-
plaint will not be deemed a new cause of action, and hence, is not
of itself subject to the plea of the statute of limitation. (Section
5367, Code 1907.)

APPEAL from Geneva County Court.

Heard before Hon. R. D. CRAWFORD, Special Judge.

Action by P. N. Hickman against R. E. Byrd. Judg-
ment for plaintiff, and defendant appeals. Reversed
and remanded.

In addition to the pleadings had on the former appeal
in this case, plaintiff filed an amendment to his com-
plaint, consisting of the following additional counts:

"(4) Plaintiff claims of the defendant the further
sum of $120, with interest thereon, for that Mrs. M. J.
M. Lewis, was on, to wit, during the month of May,
1906, indebted to the plaintiff in the sum of $120, due
October 1st of that year, and for the purpose of paying
such debt the said Mrs. Lewis had in her possession a
check for $150; and the plaintiff avers that the said
defendant went to the said Mrs. Lewis, and asked the
said Mrs. Lewis if she could help the defendant, mean-
ing thereby to ask if she could pay the defendant any
money on an account which the defendant claims that
she owed him. Whereupon the said Mrs. Lewis stated
that she was indebted to the plaintiff, and had in her
possession the money with which to pay the plaintiff,
and that she did not want to pay it out. Whereupon
the said R. E. Byrd then and there, in order to get said
money, did promise and agree with the said Mrs. Lewis
that, if she would let him have as much as $75, he, the
defendant, would pay P. N. Hickman the amount due
him, and then take up the mortgage held by Hickman
against Mrs. Lewis when the same came due, when
plaintiff avers that the said Mrs. Lewis thereupon paid
the said Byrd $75, relying upon said promise, and that

the said Byrd failed and refused to perform his part of said promise, and failed and refused to pay said sum to the plaintiff, and plaintiff avers that he has elected to accept said promise made by Byrd. Wherefore this suit.

"(5) The plaintiff adopts the entire portion of said fourth count down to and including the words, "and plaintiff avers that he has elected,' etc., and adds thereto the following: And plaintiff avers that in said conversation the defendant told Mrs. Lewis to call his attention to the fact a few days before the note to plaintiff became due, and that accordingly the said Mrs. Lewis did, on or about October 1, 1906, call at the office of the defendant, and call his attention to the promise. Whereupon the defendant did then and there again promise the said Mrs. Lewis to pay said debt, but, before doing so, required the said Mrs. Lewis to agree to transfer to the defendant the rent going to her for the rent on the place for 1907, in the sum of $150, which rent was by the said Mrs. Lewis assigned and turned over to the defendant as promised. And the plaintiff further avers that as a part and parcel of said transaction the said defendant did call the plaintiff over the phone and ascertain the amount due, and did promise to the said Mrs. Lewis to pay the amount thus due on January 1, 1907, less the interest from October 1, 1906, to January 1, 1907; and the plaintiff avers that he has elected to accept said promise and to sue thereon. Hence this suit."

The following charge refused to the defendant: "(5) The court charges the jury that there is no consideration for the alleged promise of Byrd to Mrs. Lewis down in the fields."

C. D. CARMICHAEL, for appellant. The consideration for the promise was not a valid consideration.—9 Cyc. 347; *Morrell v. Quarles,* 35 Ala. 544; *Johnson v. Sellers,* 33 Ala. 265; *Wadsworth v. Jones,* 85 Ala. 127. On the subject of suit on the promise made for the benefit of the third party see.—*Potts v. 1st Nat. Bank,* 102 Ala. 286; *Pugh v. Barnes,* 108 Ala. 167; s. c. 120 Ala. 428; *Burkham v. Mastin,* 54 Ala. 122, and auhorities there cited. Mrs. Lewis could not maintain this suit against Byrd.—*Coleman v. Hatcher,* 77 Ala. 218; see also former appeal in this case in 159 Ala. 505.

W. O. MULKEY, for appellee. The consideration was sufficient.—*Cooper v. McIlvaine,* 58 Ala. 296; 9 Cyc. 325; *Judge v. Williamson,* 19 Ala. 769; *Maull v. Vaughan,* 45 Ala. 134; *Hickson v. Hetherton,* 57 Ala. 165; *Mobile Co. v. McDonough,* 89 Ala. 435. The promise was not within the statute of frauds.—*Graves v. Shulman,* 59 Ala. 406; *Mayson v. Hall,* 30 Ala. 601; *Ragland v. Wynn,* 37 Ala. 32; *Coleman & Carroll v. Hatcher,* 77 Ala. 217; *Henry v. Murphy Co.,* 54 Ala. 246; *Young v. Hawkins,* 74 Ala. 370; *Locke v. Humphries,* 60 Ala. 117; *Burkham v. Martin,* 54 Ala. 122; *Bessemer Sav. Bank v. Groc. Co.,* 137 Ala. 530; *Moore v. 1st. Nat. Bank,* 139 Ala. 595.

McCLELLAN, J.—This is the second appeal in the cause.—*Byrd v. Hickman,* 159 Ala. 505, 48 South. 669. The sole question considered and decided on that appeal was whether the agreement made by Byrd to Hickman, over the phone and not in writing, to pay, as Hickman contended, the Lewis mortgage debt to Hickman, mortgagee, was within the statute of frauds pleaded in the cause.

It is now contended, upon amended (after reversal here) counts 4 and 5, that Byrd's alleged promise to

the Lewises to pay their mentioned debt to Hickman,. a third person for a consideration passing from Mrs. Lewis to Byrd or in consequence of a detriment suffered by the Lewises, or either of them, as the immediate result of a reliance upon Byrd's promise to pay Hickman's mortgage debt, vested Hickman with a right of action against Byrd on that promise. In short, the decision on former appeal dealt only with the inquiry whether the promise over the phone was within or without the statute of frauds. In deciding the question, necessarily requiring the construction of that agreement and the determination of its legal effect, it was ruled that forbearance was the sole consideration moving from Hickman to Byrd and supporting Byrd's promise to subsequently pay the Lewis mortgage debt; that forbearance is a sufficient consideration to support the promise of a third person to pay the debt of another to the debtor's creditor; and that such an engagement, not being a new and independent agreement, to which the payment of the debt or the other is a mere incident, is precisely the character of undertaking or obligation which the statute of frauds was intended to include and to which that statute does apply. The decision was rested distinctly upon the case of *Westmoreland v. Porter*, 75 Ala. 452, which was in immediate point. It was delivered in 1883, and has been repeatedly referred to since without intimation that its rule, in the particular in question, was of doubtful soundness. Its doctrine is expressly recognized in *Clark v. Jones*, 85 Ala. 127, 4 South. 771. That the doctrine of the case is generally regarded as sound may be seen by reference to 20 Cyc. p. 192, and notes to subhead 3.

After determining the question presented, as indicated, in the former appeal, out of the abundance of caution we expressly excluded an intent to consider or

pass upon the application vel non of the statute of frauds to the promise, both affirmed and denied in the evidence, by Byrd to the Lewises, to pay the Hickman mortgage debt. That excluding expression might well have been omitted, since if for a consideration moving from the debtor, or for a detriment suffered by a debtor, a third person engages with the debtor to pay the debt to the creditor, the agreement is not within the statute of frauds, because that engagement is new and independent and is supported by a new consideration, thereby excluding the idea that the engagement is one of mere suretyship which, to avoid the condemnation of the statute of frauds, must be in writing.—*Clark v. Jones,* 85 Ala. 127, 131, 4 South. 771.

The amendment was made by the addition of counts 4 and 5. They will be set out in the report of this appeal. As appears, these counts proceed on the theory that Byrd's promises to the Lewises to pay the Hickman debt was based upon a new consideration of advantage to Byrd or of detriment to the Lewises, or both advantage and detriment, respectively. If supported by a consideration, that promise of Byrd's was without the statute of frauds and enforceable by the beneficiary, the creditor, Hickman, though not in writing.

It is insisted in brief that counts 4 and 5 effected to bring in a new cause of action. The question was not presented or decided below. After demurrers to counts 4 and 5 were overruled, the defendant pleaded, besides the general issue, want of consideration and the statute of frauds. There was no plea of the statute of limitations to the cause of action averred in counts 4 and 5. On these counts (4 and 5) the issues were only those raised by the pleas indicated. It follows, of course, that the general affirmative charge requested by defendant invoked only a ruling of the court upon the issues of

fact created by the averments of the counts and the pleas interposed thereto, and the statute of limitations was not one of them.

We can conceive no case where the general affirmative charge could serve in lieu of objection to the allowance of an amendment alleged to work the introduction of a new cause of action, or of motion to strike on that account.—*Tenn. & Coosa R. R. Co. v. Danforth,* 112 Ala. 80, 20 South. 502; *Stewart v. Goode,* 29 Ala. 476.

The contention, grounded on some of the assignments of demurrer to count 5, that that count undertook to enjoin two distinct causes of action, cannot be sustained. Reading count 5 in connection with count 4, as adopted by count 5, it is clear that the engagement declared on in count 5 was that averred in count 4, with the addition thereto of an element incorporated therein by mutual assent of the parties, viz., the agreement of Mrs. Lewis to transfer to Byrd the rent note for 1907. No new consideration other than mutual assent of Lewis and Byrd was necessary to support the addition so made to the agreement set forth in count 4.—*Cooper v. McIlwain,* 58 Ala. 296; 2 Mayfield's Dig. p. 798.

The chief matter of controversy on this appeal is whether the promise of Byrd, as described in count 4, to pay the Hickman debt, was supported by a new and independent consideration. It is insisted for appellant that the rule that one's doing, or agreeing to do, or not to do, that which he is in duty bound to do, or not to do, is not a sufficient consideration to support a promise by another.

The rule is of course sound.—1 Pars. Contr. p. 475, and notes.

We see no escape from the conclusion that, as far as the case made on count 4 is concerned, the application of the just-stated rule to the evidence before the court

required the giving of charge 5, requested for defendant. That instruction declared that the promise of Byrd, made "down in the field," was without consideration. We quote Mrs. Lewis' testimony bearing on this matter, and nowhere in the bill is its force or effect qualified in respect of the promise relied on in count 4: "In the spring or early summer of 1906, the defendant came to my field where I, my husband, and Wes Dunn were at work, there being no one present at the time except those named, and asked me if we could help him out on what we owed him. At that time, I and my husband both were indebted to R. E. Byrd & Co., of which defendant was a member, as well as to the Bank of Coffee Springs, of which defendant was cashier; but I cannot say how much we owed said company or said bank. I told the defendant that I could and would help him on what we were owing him, provided he would help me on what I owed plaintiff when it was due; that I then held a check for $100 which was the proceeds of the sale of my timber, which I had and held to pay to plaintiff on the note and mortgage due him on the 1st of October, and already mentioned, having sold the timber to get the money to pay plaintiff. Defendant then told me, if I would pay him the money, he would pay the amount I owed plaintiff when it fell due, and, defendant having made this agreement, I said: "On your promise to pay plaintiff said debt of mine, when it falls due, I will pay you $75 of said check.' I then went to the house and paid him $75 of said check; the defendant taking the check for $100 and returning to me $25. The defendant in accepting said money promised me he would take up my mortgage to plaintiff when it fell due, and told me to call his attention to the matter a short time before it fell due."

The purpose of Mrs. Lewis, inducing her to convert the timber into money wherewith to pay the Hickman debt, is not material; the legal inquiry being the effect of her act in reliance upon Byrd's promise. Unquestionably, she paid the sum on the debts to Byrd or to concerns represented by him. If Byrd, or the concerns represented by him, were the actors in litigation to enforce the payment of the debts due by the Lewises to them, it cannot be doubted that on the testimony in this transcript the sum paid upon the promise made by Byrd "down in the field" would justify the affirmative instruction that that sum should be credited on those debts, consistent with the rules for the application of payments. The source from which the sum so paid came, viz., timber, has been considered, in view of the fact, as we take it, that the mortgages, by the Lewises, to secure debts other than Hickman's, did not include land from which the timber was taken; whereas, Hickman's mortgage did cover a small tract from which the timber might have been taken. The bill does not indicate that the timber came from lands covered by the Hickman mortgage. But, if so, how could that avail Hickman? The reliance for recovery on the counts added by amendment rests on Byrd's promise to Mrs. Lewis to pay the Hickman debt, and not on any deprivation of Hickman of the sum so paid, and which (let us assume merely) was the product of a sale of timber on which Hickman, alone, had a claim or lien created by his mortgage on the land.

Count 5, and the evidence tending to its support, present a very different status from that arising out of count 4 and the evidence in its support. The count alleges that Mrs. Lewis promised to assign and deliver to Byrd, and later did so, a rent note from one Davis, for the rent of her land for the year 1907. It does not

appear from the count that such note or rent was delivered to Byrd as payment on their (Lewises') debts to Byrd or to the concerns he represented; nor does it so appear, affirmatively, from the evidence in this case. If such was the case, under the principle applicable and applied to the status shown by count 4 and the evidence in support of it, the promise to pay the Hickman debt would fail of consideration, as must the promise made "down in the field."

The assignment and delivery of this rent note obviously afforded a new and independent consideration, of benefit to Byrd or his concerns and of disadvantage to Mrs. Lewis, for the promise to pay the Hickman debt, if the assignment and delivery of the rent note was not merely a payment on the Lewises' debts to Byrd or to his concerns. It was open to inference, by the jury, from the evidence, which has been carefully considered, that such assignment and delivery was not a payment on the debt. It is insisted in brief for appellant that an agreement concluding otherwise, as we have indicated, than as payment on the Lewis debts to interests represented by Byrd, would have been so irrational as to forbid credence. That argument must be addressed to the jury. Whether an asserted agreement is peculiar, or so unusual as to indicate irrationality, must in fact depend, largely, upon the point of view, as well as the circumstances surrounding the parties. A contract that offends no law may be peculiar and may bear grievously upon one of the parties thereto, yet we know of no judicial right to avoid it because the accepted terms are onerous.—*Lee v. Cochran,* 157 Ala. 311, 47 South. 581.

A careful consideration of the errors assigned as upon rulings of the court in the admission and rejection of evidence shows them to be without merit.

Since a reversal must follow, we deem it proper to say, for further guide on the next trial, if it proceeds upon the status of pleading now in the case, that there can be no recovery upon the alleged promise of Byrd other than that supported by the consideration present in the assigned and delivered rent note. In short, the recovery can only be, on the present pleadings, on the case made by the facts averred in the fifth count. Accordingly, the court should, on the present state of pleadings, expressly, if so requested, rule the right to recover down to that point.

The addition of count 5 did not introduce a new cause of action.—Code, § 5367; *Ala. C. C. & I. Co. v. Heald*, 154 Ala. 580, 45 South. 686. Hence, even if the statute of limitations is later pleaded thereto, the court may, upon request, if the evidence is again as now, affirmatively instruct the jury that it is not sustained.

The chief issues are of fact, and nothing we have said in discussion must be taken as intimating an opinion thereon.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.